This appeal is from a judgment entered in a case brought under the third party provision of the Workmen's Compensation Act (§ 25-5-11, Code 1975) against four co-employees. We affirm.
Plaintiff Earl Clements was employed by Louisiana Pacific Corporation in Barbour County as a press board operator. In 1979, Louisiana Pacific was in the process of converting the facility where Clements was employed from a particle board plant to a medium density fiberboard plant. This required the dismantling of all the old equipment and installing new equipment, thus forcing the facility to shut down. Louisiana Pacific used their own employees to aid in dismantling the old and installing the new equipment.
On 3 May 1979, Clements, along with three other employees, was assigned to dismantle what is called the surge bin at the plant. Clements was injured when a plywood board that he was walking on gave way under him, causing Clements to fall approximately twenty-one feet onto a concrete slab. As a result, Clements suffered multiple fractures and internal injuries.
Clements filed this action against the following: Robert Webster, the process consultant for the plant conversion; C.B. Wesson, the plant manager; and Rodney Bowersox, the plant superintendent. The complaint alleged negligent and/or wanton conduct by the defendants in the following areas: supervising of work performed by Clements; failure to provide proper equipment or safety apparatus; plant inspection; failure to warn of known dangers; failure to provide proper safeguards, machinery or procedures; allowing work to progress in a dangerous or hazardous manner; failure to provide equipment and a safe place to work; and providing faulty or defective plans for the work to be performed. Clements claimed damages of $750,000. The complaint was later amended to add as a defendant, Dennis Green, the maintenance superintendent.
We note that Clements's wife Ann is also a plaintiff, claiming damages for loss of consortium.
The case was tried before a jury, and after all parties had rested, the trial judge granted a motion for a directed verdict in behalf of the defendant Webster. The jury returned a verdict in favor of the three remaining defendants; judgment was entered accordingly. Clements's motion for a new trial was denied.
Clements contends that the trial court committed error directing a verdict in favor of Webster when there was sufficient evidence to submit the case against him to the jury. Webster's job as process consultant required him to lay out equipment flow, purchase equipment, prepare drawings, and work out a time schedule for dismantling the old and installing the new equipment. Webster gave no personal instructions to anyone, including Clements, about dismantling the surge bin. Jack Sanders was directly in charge of the work crew who dismantled the surge bin and he received his instructions from R.B. Jones who worked directly under Green, the maintenance superintendent.
The test to determine if Webster is liable to Clements is whether or not Louisiana Pacific had delegated to Webster, as a part of his duties of employment, the duty to assure Clements a reasonably safe workplace. Fireman's Fund American InsuranceCo. v. Coleman, 394 So.2d 334 (Ala. 1980). There is no evidence to establish a personal duty owed by Webster to Clements, nor was *Page 1060 
any evidence presented showing Webster owing Clements a duty to provide him with a reasonably safe workplace. A co-employee cannot be held liable merely because he has a general administrative responsibility; the fact that a person is in an administrative or supervisory position alone does not make that person liable. It is the burden of the injured party to prove, with specificity, the co-employee's delegated or assumed duty, and the breach thereof, out of which the claim for recovery arises. This court addressed this issue in Carter v. Franklin,234 Ala. 116, 173 So. 861 (1937):
 "[I]t cannot be questioned that in tort actions all persons are jointly and severally liable for the proximate results of their negligence or wanton conduct. The relation of employer and employee excuses neither. In some jurisdictions a mere day laborer acting under superiors is not held liable for acts of mere nonfeasance. This court has not approved such distinction. Whether his failure of duty be one of commission or omission is unimportant. But he must be a wrongdoer in such sort that under the particular facts of the case his negligence or wrongful act was a proximate cause of an injury. . . ."
In light of the evidence showing that Webster owed no duty to Clements to provide the latter with a reasonably safe workplace, we agree with the trial court that Webster was entitled to a directed verdict. Whether tested by the substantial evidence rule or the so-called scintilla rule, the record shows no evidence from which the jury could reasonably infer that Clements's injuries were proximately caused by the negligence or wantonness of Webster. The law in this regard is aptly summarized in Coburn v. American Liberty Insurance Co.,341 So.2d 717 (Ala. 1977):
 "[T]he trial Court must exercise extreme caution not to usurp the fact finding function of the jury; but it is the office of a directed verdict motion (Rule 50 (a)) to test the sufficiency of the opponent's evidence. And where, as here, the strongest tendencies of all the evidence fall short of raising a reasonable inference of the movant's alleged liability, the motion is due to be granted. . . ."
Clements also asserts that the trial court committed reversible error by refusing to admit portions of Webster's deposition concerning what could have been done to prevent the injury to Clements. Observations by Webster regarding that matter can only be made in retrospect. A Circuit Court of Appeals of the United States addressed this issue:
 ". . . Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. . . ."
Carufel v. Chesapeake and Ohio Railway Co., 286 F.2d 193, 195
(6th Cir. 1961). The trial court was correct in excluding those portions of the Webster deposition.
Clements maintains that error was committed when the trial court interrupted Clements's counsel on redirect examination of the witness Willie Wellbern and asked questions from the bench, and, after objection, making statements in the presence of jury about the weight and sufficiency of the evidence. The trial court asked that witness the following questions:
 "THE COURT: For my information how wide — In Mr. Green's testimony yesterday he mentioned `catwalk' and said that was a misnomer, it ought to be `work platform', which would indicate to me a larger area than the catwalk.
 "How big an area did you have up there that you call either the work area or the catwalk? How wide a place did you have?
 "WITNESS: I wouldn't know for sure. I would estimate, maybe, that —
 "THE COURT: Was the top of the bin from here to someplace in the courtroom? Was it a round type bin?
"WITNESS: No, square.
 "THE COURT: Square. Well, how square was it, from here to someplace in the courtroom —?
"WITNESS: Maybe from here to that first bench. *Page 1061 
 "THE COURT: To the first bench. All right. It was that square?
 "WITNESS: To the rail there — Maybe, from here to that rail. I would say, maybe, the rail.
 "THE COURT: I believe I heard fifteen feet square —
"WITNESS: Yes.
 "THE COURT: I thought I heard the other day fifteen or twenty feet square. But, anyway, it was approximately to the rail?
"WITNESS: (Nods head up and down.)
 "THE COURT: Now, you say the work area was some six inches above it?
"WITNESS: Roughly.
 "THE COURT: That was all metal. What type floor did it have? Expanded metal or what type floor?
"WITNESS: It was expanded, I believe.
 "THE COURT: And was it built around the bin, sort of?
"WITNESS: Right."
It is within the discretion of the trial court to propound questions and examine witnesses for the purpose of eliciting proper evidence bearing on the issues.
 ". . . The primary limitation upon the trial judge's right to question is the rule that he cannot so question as to create an impression that he favors a particular party. The trial judge's examination of a witness will constitute error if his method of doing so improperly prejudices one of the parties by indicating the judge's opinion as to the just outcome of the case."
Gamble, McElroy's Alabama Evidence, § 121.04 (3d Ed. 1977).Higginbotham v. State, 262 Ala. 236, 78 So.2d 637 (1955).
There is nothing in the record indicating the trial court abused its discretion by questioning the witness, nor did it indicate to the jury its opinion of the merits of the case by that questioning.
Clements complains that the trial court commented on the weight and effect of the evidence by making the following statements in the presence of the jury:
 "(THEREUPON, a short discussion was held at the bench between counsel and the Court out of the hearing of the jury and court reporter.)
 "(The following proceedings were had at the bench out of the hearing of the jurors.)
 "THE COURT: Andy, let the record show that they object to me asking these questions, but it is my duty to try to bring out facts if they have not been developed. And I don't believe the jury has enough facts now to put in their minds where the accident happened. So, if you want to develop it further, I'll be happy to let you.
"MR. ROACH: I haven't rested yet, Judge.
 "(THEREUPON, the following proceedings were had in the presence and hearing of the jury as follows:)
 "THE COURT: Well, all right, we'll stop here. And if you rest without doing it, then we will have to go into it further, because I think the jury needs more facts as to the location of the platform that the work is on, and all that.
"MR. ROACH: I agree with that, Judge.
 "THE COURT: I don't like to get in a case. When I first started I was a lawyer, and it is hard not to get into it; but, I learned a long time ago to hold my tongue and it will come out some other way; but, I didn't think it was going to come out in this case, and —."
Clements contends that the court reporter incorrectly stated on the record that only the last two paragraphs of statements were made in the presence of the jury. However, the record shows that the first paragraph was held out of the hearing of the jury and the record does not show that any proceedings were had in an attempt to correct it. Blanton v. Blanton, 276 Ala. 681,166 So.2d 409 (1964), states the rule in this regard:
 ". . . The longstanding rule of this Court has been that the Supreme Court is remitted to the consideration of the record alone and absolute truth must be imputed *Page 1062 
to it, and if it is incomplete or incorrect, amendment or correction must be sought by appropriate proceedings rather than by impeachment on hearing in the appellate court, by statements in brief, by affidavits, or by other evidence not appearing in the record. . . ."
We find no impropriety in the questions to the witness, or the comments made afterwards, by the trial court.
During the course of the trial, Judge McCullough, an employee of Louisiana Pacific, was observed talking to one of the jurors during a recess. The juror was later identified as the foreperson of the jury. This was brought to the trial court's attention in the motion for new trial and by an affidavit of Russell Irby, one of Clements's lawyers.
Appellees assert that the issue of alleged improper jury contact is not properly before this court because it was raised only in the motion for new trial and Clements does not assert error in the denial of the motion for new trial. We do not agree. The scope of appellate review is not limited by the notice of appeal designation of the judgment or order appealed, whether such appeal is taken from the final judgment or from the order denying a motion for new trial. ARAP 3 (c); McGoughv. Slaughter, 395 So.2d 972 (Ala. 1981).
However, there is nothing in the record to substantiate any alleged improper contact with a juror. There is no evidence that the trial court was given notice of such action until the motion for new trial was filed. Clements should have immediately brought this to the trial court's attention, at which time all of the alleged participants could have been examined. As it stands, there is no evidence before this court to support a finding in favor of Clements in this regard.
Louisville N.R.R. Co. v. Turney, 183 Ala. 398, 62 So. 885
(1913), stated in part:
 ". . . But casual meetings and the interchange of casual and ordinary civilities between a party and a juror during the recesses of the court, no sinister design being apparent, will not ordinarily suffice to avoid the verdict, if the court can clearly see that it could not have had any effect on the mind or sentiment of the juror. . . ."
This court is by no means approving the alleged improper contact with the juror. In fact, a conversation between a juror and the employee of the company who had a monetary interest in the case has an appearance of impropriety. But we do not know what, if anything, was discussed between McCullough and the foreperson. On questions of this kind, the ruling of the trial court is presumed correct and that court was within its sound discretion in not granting a new trial on that ground.Prestwood v. Ivey, 273 Ala. 281, 138 So.2d 713 (1962).
For the reasons assigned, the judgment is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.