This is an appeal by plaintiff, Ann Ritchie, from summary judgment in favor of defendants, St. Paul Fire Marine Insurance Company, Malen McCracken, and James Bullock (incorrectly designated in the pleadings and notice of appeal as "Bullet"), whose alleged negligent inspections and failure to provide a safe workplace resulted in plaintiff's injuries. We affirm in part, reverse in part, and remand.
Ritchie, employed by the Mobile Association for the Blind ("the Association"), was injured on January 4, 1983, when her arm was caught between two heavy metal swinging doors. At the time of the accident, she had been employed by the Association for about 14 years. She worked in the Association's sheltered workshop as a seamstress and inventory clerk. This particular department of the Association employs handicapped individuals to manufacture various types of mop heads. Ritchie is visually impaired in that she has limited peripheral vision.
On the day of the injury, Ritchie was walking through a set of industrial-type metal swinging doors when she thought she heard someone call her name. When she turned her head away from the doors, they swung shut, catching her arm between them and causing severe injury to her arm.
On December 13, 1983, Ritchie brought this negligence action, naming as defendants James Bullock, the shop manager in the area in which she worked; Malen McCracken, the executive director of the Association; and St. Paul Fire Marine Insurance Company ("St. Paul"), the Association's workmen's compensation carrier. Ritchie alleged that Bullock and McCracken had failed to provide her with a safe place to work and that St. Paul had been negligent in its inspection of the subject work area. The trial court granted summary judgment in favor of all defendants.
To grant summary judgment, a trial court must determine that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P. The burden is on the moving party to show the absence of any genuine issue of material fact, and the evidence must be viewed in the light most favorable to the non-moving party. In other words, the court must draw from the evidence those inferences most favorable to the non-moving party.Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976). That is the standard of review applicable to this case.
Co-employee liability in Alabama is based upon the employer's statutory duty to provide a reasonably safe workplace. Code of 1975, § 25-1-1. In Ritchie's co-employee *Page 918 
claims against Bullock and McCracken, she alleges that they are personally liable for her injury because they were delegated or assumed the duty owed by the Association to its employees to provide a safe workplace. Fontenot v. Bramlett, 470 So.2d 669
(Ala. 1985).
The liability of a co-employee is not determined solely on the basis of the co-employee's job title or the amount of control he exerts at the workplace. Clements v. Webster,425 So.2d 1058 (Ala. 1982). In order to impose liability upon a defendant co-employee, the plaintiff must make the showing recently set forth by this Court in Clark v. Floyd,514 So.2d 1309, 1316 (Ala. 1987):
 "First, the plaintiff must show that, as part of the defendant co-employee's responsibilities, he voluntarily assumed or was delegated his employer's duty to provide a safe place to work. Second, the plaintiff must show that the co-employee breached that duty by failing, either through omission or commission, to discharge the delegated or assumed obligation with reasonable care. Third, the plaintiff must show that this breach directly or proximately caused the plaintiff's injury. Kennemer v. McFann, 470 So.2d 1113 (Ala. 1985); Welch v. Jones, 470 So.2d 1103
(Ala. 1985); Clements v. Webster, 425 So.2d 1058
(Ala. 1982); Fireman's Fund American Ins. Co. v. Coleman, 394 So.2d 334 (Ala. 1980)."
 I. James Bullock
In Malen McCracken's deposition, he testified as to his and Bullock's respective duties:
 "Q. Whose responsibility is it to perform safety inspections of the work area of your various workers?
 "A. We don't have anyone specifically assigned to that. But, as I go through or as anyone else on the staff may go through and notice things, we'll try to make corrections.
"Q. What kind of things are you talking about?
 "A. Anything that may be — what we may think of as a problem area. A safety hazard.
 "Q. If you saw, for example, a door which was broken, would that be the kind of hazard that you are talking about correcting?
 "A. I guess it would depend on the door and the problem.
"Q. How often are inspections made?
"A. I beg your pardon?
 "Q. How often do you make these walk-through inspections?
 "A. I am usually through the building at least three or four times a week.
 "Q. Now, if one of the members of your staff saw something that was a potential safety hazard, it would be their responsibility to see to it that it was fixed or reported to you?
 "A. Their responsibility — I don't know that they have been specifically told to go back and look for things, but things that are noticed usually are reported.
 "Q. They take it upon themselves to report it to you; is that correct?
"A. Usually.
 "Q. Then, it is your responsibility to see to it that it is repaired?
"A. Yes.
 "Q. Would the supervisor of the shop or more particularly, would Mr. [Bullock] have the occasion to go through these particular doors every day, as far as you know?
"A. As far as I know.
 "Q. If he saw a potential safety hazard existing in this particular work area, do you think it would be his responsibility to report that to you?
"A. I would think so."
A review of the record reveals no indication that the Association, as Ritchie's employer, had delegated to defendant Bullock any portion of its duty to provide a reasonably safe place of employment. Moreover, McCracken's testimony that his staff would "usually" report a noticeable safety hazard falls far short of suggesting a voluntary assumption of duty by Bullock. Furthermore, McCracken's testimony that he *Page 919 
"would think" Bullock would report a potential safety hazard if he saw one is not probative evidence of any voluntary assumption by Bullock to provide a safe workplace for his co-employees. There is no evidence that a specific safety hazard had been reported by Bullock at any time during his employment. The evidence shows, at most, only that Bullock had observed what had been apparent for at least 14 years — that there were two swinging doors separating the rooms. Bullock specifically testified that he knew of no organized safety programs at the Association or of any person designated or acting as safety supervisor or "safety man." In addition, the plaintiff herself testified that there was no safety program at the Association and that there were no "safety meetings where one of the employees would discuss job safety."
There cannot be drawn from the evidence a reasonable inference that defendant Bullock had voluntarily assumed or had been delegated his employer's duty to provide a safe workplace, nor did his general supervisory responsibilities serve to put him in charge of insuring safety in the workplace. Therefore, summary judgment in favor of defendant Bullock was proper.
 II. Malen McCracken
Defendant McCracken stated that, as he walked through the workshop and noticed potential problems or problem areas, he would make corrections. He further stated that he would see that any defect or hazard reported to him was corrected. A reasonable inference from this evidence is that defendant McCracken had voluntarily assumed, or had been delegated, the duty to provide the plaintiff with a safe workplace. This inference constitutes at least a scintilla of evidence in support of plaintiff's claim against McCracken. Thus, the summary judgment was improper as to McCracken and as to him is due to be reversed.
 III. St. Paul
In Clark v. Floyd, supra, this Court discussed the principles governing the liability of an insurance company for negligent safety inspections:
 "The Court quoted from Barnes v. Liberty Mutual Ins. Co., 472 So.2d 1041, 1042 (Ala. 1985):
 " 'Common law liability to third parties can arise from the negligent performance of even a voluntary undertaking. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844
(1971). Under current Alabama law, a worker's compensation carrier may be liable when it voluntarily undertakes to inspect an employer's premises for safety. Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 338
(Ala. 1980). However, in a suit of this nature, a plaintiff bears the burden of proving (1) that the defendant had a duty, or assumed a duty by voluntarily undertaking the inspection; (2) the scope of that duty; (3) [that] the duty was breached; (4) [that] there was damage or injury; and (5) [that] the injury was proximately caused by that breach. Fireman's Fund, 394 So.2d at 349 (Jones, J., concurring); see also, United States Fidelity Guaranty Co. v. Jones, 356 So.2d 596
(Ala. 1977).' "
514 So.2d at 1313-14.
It is undisputed that St. Paul (1) was the workmen's compensation carrier for the Association; (2) conducted periodic safety inspections of the work area in which plaintiff was injured; and (3) knew that blind individuals worked in the workplace inspected by its agents. Thus, it is clear that St. Paul assumed a duty by voluntarily undertaking to inspect. However, it is the scope of that duty and whether it was breached that are in question here.
In his concurring opinion in Fireman's Fund American Ins. Co.v. Coleman, 394 So.2d 334, 349 (Ala. 1980), Justice Jones postured two aspects of the duty owed by a workmen's compensation carrier when it makes voluntary inspections of an insured's workplace:
 "In defining the nature of the duty undertaken by a voluntary inspection, two aspects must be considered — the *Page 920 
physical scope of the undertaking and the degree of scrutiny and action mandated by conditions observed or reasonably observable. Both the actual physical area required to be inspected in a reasonable survey of the premises and the appropriate action to be taken by the inspecting party as a result of the survey must be determined to establish the standard of care which the inspecting party must observe in order to discharge its duty. This standard of care requires that the area inspected be of such a size and nature as to constitute a representative sampling of the work place, that the inspection be done with reasonable care, that hazards observed and appreciated, or which should have been observed and appreciated, be reported with the promptness commensurate with the degree of danger perceived or which reasonably should have been perceived; and that any corrective action within the inspector's ambit of authority or within the scope of its undertaking be instituted with appropriate haste."
Plaintiff contends that St. Paul's inspection was negligent in that it failed to reveal that the swinging metal doors used by the Association were a safety hazard to its employees. St. Paul's records reflect that among the items inspected were machine guarding, material handling, and storage, as well as special hazards at the workplace, personnel protection equipment used, and the type of employees working in the inspected area. Wallace L. Jacobs, the person with St. Paul most familiar with the workmen's compensation inspections of the Association, described "special hazards" as being a subjective term depending on the type of plant operation being inspected. That is, the type of personnel and the type of plant operations being inspected would have a bearing on whether St. Paul considered something in the inspected area a "special hazard." In addition, Jacobs stated that it would have been a part of his duty and responsibility, as an agent of its workmen's compensation carrier, to make recommendations to the Association to change the doors if he considered them to be a safety hazard.
Although Jacobs thought that the doors in question did not constitute a special hazard, there is contrary evidence in the record. Dr. George W. Douglas, chairman of the Department of Mechanical Engineering at the University of South Alabama, stated that the doors are "an obvious defect and anyone who undertakes to inspect the premises for safe operation should have recognized that."
Thus, a genuine issue of material fact exists as to whether St. Paul properly inspected the Association workshop in which the plaintiff was injured, thereby precluding summary judgment in favor of St. Paul. Accordingly, as to St. Paul, the judgment is due to be reversed.
All the defendants argue by way of defense that, if the doors in which plaintiff was injured were dangerous, then they constituted an open and obvious danger. They also argue that the record establishes that the plaintiff was contributorily negligent as a matter of law. However, none of the defendants affirmatively pleaded these defenses. Rule 8(c), A.R.Civ.P., provides that "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively . . . assumption of risk, contributory negligence . . . or any other matter constituting an avoidance or affirmative defense."
Based on the foregoing, the judgment is due to be, and it hereby is, affirmed as to Bullock but reversed as to McCracken and St. Paul, and the cause is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur. *Page 921