STEAGALL, Justice.
Plaintiff, James H. Hough, appeals from summary judgments in favor of defendants, Jimmy Nichol, Mitchell Hall, and St. Paul Fire and Marine Insurance Company in an action alleging negligence and negligent failure to inspect.
On August 1, 1983, Hough was employed at ALFAB, Inc., in Enterprise, Alabama, which is in the business of metal fabrication, specifically, building staircases, handrails, wall rails, and mats. While performing his job as a “grinder,” [1] Hough was injured when an overhead crane struck a mobile 20-foot maintenance platform near Hough’s workstation. The platform fell, striking the handrail Hough was working on, causing it, in turn, to strike Hough and render him unconscious.
On August 1, 1984, Hough filed suit in Houston County against Nichol, as plant supervisor at ALFAB; against Hall, as plant manager at ALFAB; against St. Paul Fire and Marine Insurance Company (“St. Paul Insurance”), as the insurance carrier that had contracted to provide ALFAB with workmen’s compensation insurance and coverage, alleging that St. Paul Insurance undertook to make safety inspections and was negligent in that undertaking; and against fictitiously named defendants under Alabama’s Extended Manufacturer’s Liability Doctrine, alleging that they had provided defective operational controls and component parts of the crane involved in the accident.[2] Hough’s complaint against Nichol and Hall alleged that, pursuant to Ala.Code 1975, § 25-1-1, each owed a duty to provide Hough with a reasonably safe place to work and to do everything reasonably necessary to protect the life, health, and safety of Hough and that each was negligent in the performance of that duty.
After the case was transferred from Houston County to Coffee County, a hearing was held on the defendants’ motion for summary judgment. On May 23, 1988, the trial court entered summary judgment in favor of Nichol and Hall and made that judgment final pursuant to Rule 54(b), Ala. R.Civ.P., and, on August 15, 1988, entered summary judgment in favor of St. Paul Insurance.
On appeal, Hough argues that the trial court erred in entering summary judgment in favor of St. Paul Insurance on the issue of negligent inspection and as to Nichol and Hall on the issue of co-employee liability-
Because this case was pending prior to June 11, 1987, the review is governed by the scintilla rule. The standard of review this Court must follow in reviewing the trial court’s entry of summary judgment is well settled:
*468 “Summary judgment for a defendant is proper when there is no genuine issue of a material fact as to any element of a cause of action and the defendant is entitled to a judgment as a matter of law. If there is any evidence of every element of a cause of action, summary judgment is inappropriate. In determining whether there is any evidence to support every element of a cause of action in this case, this Court must review the record in a light most favorable to the plaintiffs and resolve all reasonable doubts against the defendant.”
Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986).
We first address Hough’s claim against St. Paul Insurance on the negligent inspection theory. Both St. Paul Insurance and Hough rely on Clark v. Floyd, 514 So.2d 1309 (Ala.1987), as controlling. In that case, this Court stated:
“In Adams v. Travelers Ins. Co., 494 So.2d 401, 403 (Ala.1986), this Court quoted from Barnes v. Liberty Mutual Ins. Co., 472 So.2d 1041, 1042 (Ala.1985):
“ ‘Common law liability to third parties can arise from the negligent performance of even a voluntary undertaking. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971). Under current Alabama law, a worker’s compensation carrier may be liable when it voluntarily undertakes to inspect an employer’s premises for safety. Fireman’s Fund American Insurance Co. v. Coleman, 394 So.2d 334, 338 (Ala.1980). However, in a suit of this nature, a plaintiff bears the burden of proving (1) that the defendant had a duty, or assumed a duty by voluntarily undertaking the inspection; (2) the scope of that duty; (3) whether the duty was breached; (4) whether there was damage or injury; and (5) whether the injury was proximately caused by that breach. Fireman’s Fund, 394 So.2d at 349 (Jones, J,, concurring); see also, United States Fidelity & Guaranty Co. v. Jones, 356 So.2d 596 (Ala.1977).’
“In Barnes, we held that proof of a general inspection of the premises by the insurance carrier was insufficient to establish a negligent inspection when that proof did not contain any evidence of an undertaking by the insurance carrier to inspect the specific area of the plant where the injury occurred. Barnes, 472 So.2d at 1042. In Adams, we refused to accept the plaintiff’s argument that the insurance company’s failure to inspect the plant while it was in operation was, in and of itself, proof of a negligent inspection. Adams, 494 So.2d at 404. Since the inspection had occurred after the plant had shut down for the day, we held that the insurance company had not undertaken a duty to discover any defects in its insured’s operation. Id.”
514 So.2d at 1313-14.
Hough argues that “[t]he duty was breached as a defect in the operation of the crane and the way the crane was set up around various products caused the plaintiff to suffer injury.” However, a complete review of the record shows that St. Paul Insurance never inspected any of the cranes located on ALFAB’s premises. Likewise, St. Paul Insurance never inspected the metal platform that actually caused Hough’s injuries. Wallace Jacobs, St. Paul Insurance’s safety inspector for ALFAB, testified in his deposition:
“Q. Did you ever close up inspect one of them [cranes]?
“A. No, sir.
“Q. Did you ever ask to be able to inspect one of those cranes?
“A. No, sir.
“Q. What other hazards are associated with the cranes?
“MR. ASH: I object to the form. That’s assuming there are hazards associated with it.
“MR. PITTMAN: Same objection.
“Q. Go ahead and answer.
“A. One hazard that would be associated with it you might attempt to move a load over people that were working, chain, sling, cable could fail and drop it a little bit.
“Q. At any time that you were in ALFAB’s plant did you see the cranes in operation?
*469 “A. I am sure I did.
“Q. Did you ever see the cranes moving any type of materials over people or over work areas?
“A. Please describe work areas.
“Q. Anyplace that any individual would be walking or working.
“MR. ASH: Would be or was?
“Q. Was, would be.
“A. Let me back up one step. The major reason for cranes being here was to move materials to particular work places where people were working.
“Q. In the course of moving it to the work areas and moving it back would it go over any other work areas or walkways where individuals would be?
“A. Were or would be?
“Q. Would be, could be.
“A. It is simple logistics.
“Q. That’s what I am trying to determine.
“A. This is what I explained to you. The reason was to get the materials there. Surely if I am working in the middle of a work area, they have got to get the material to me.
[[Image here]]
“Q. Did you ever do any kind of test or any kind of examination of the cranes that are located in ALFAB?
“A. No, sir.
“Q. Why not?
“A. As I explained to you originally we are not finite machinery inspectors. We deal primarily in what people do for themselves or setting up programs to do for themselves. I am not — you would require somebody with a different knowledge and skill.
[[Image here]]
“Q. From 1978 to 1984 on the six to eight occasions you have been at ALFAB you have never seen the metal type of maintenance platform that was knocked down by the crane that injured James Hough?
“A. No, sir.”
While Jacobs discussed in his deposition the general hazards associated with overhead cranes, he never stated that he had observed those practices at ALFAB, nor has it been shown anywhere in the record that those general hazards were present on the day Hough was injured. Therefore, we find that there was no genuine issue as to any fact material to Hough’s negligent inspection theory and that summary judgment in favor of St. Paul Insurance was proper.
We next address Hough’s contention that the trial court erred in entering summary judgment on the issue of co-employee liability. This Court has stated:
“The imposition of liability on a co-employee, however, [is] not automatic; it does not arise out of one’s job title or even out of the amount of control, in and of itself, which the co-employee exerts at the workplace. Clements v. Webster, 425 So.2d 1058 (Ala.1982). To impose liability on a defendant co-employee in this state, the plaintiff must bear the burden of proving the elements of a three-prong test for the co-employee defendant. Clements, 425 So.2d at 1060.
“First, the plaintiff must show that, as part of the defendant co-employee’s responsibilities, he voluntarily assumed or was delegated his employer’s duty to provide a safe place to work. Second, the plaintiff must show that the co-employee breached that duty by failing, either through omission or commission, to discharge the delegated or assumed obligation with reasonable care. Third, the plaintiff must show that this breach directly or proximately caused the plaintiff’s injury. Kennemer v. McFann, 470 So.2d 1113 (Ala.1985); Welch v. Jones, 470 So.2d 1103 (Ala.1985); Clements v. Webster, 425 So.2d 1058 (Ala.1982); Fireman’s Fund American Ins. Co. v. Coleman, 394 So.2d 334 (Ala.1980). In all actions arising out of Code of 1975, § 25-1-1, negligence will lie against the defendant co-employee if, and only if, the plaintiff proves all three elements of the test by at least a scintilla of evidence.”
Clark, 514 So.2d at 1316.
After a thorough review of the record, we find that Hough has not presented the scintilla needed to defeat the *470 summary judgment motion. Here, both Hall and Nichol were management personnel, Hall being the plant manager and Ni-chol being Hough’s direct supervisor. Each was alleged to have breached a statutory duty imposed by Code 1975, § 25-1-1, which bases liability on an employer’s failure to provide a reasonably safe place to work. The question, then, turns on whether Hough has put forth a scintilla of evidence to show “the delegation to, or the voluntary assumption by, either of them, of any of the employer’s common law or statutory duties, and if so, whether the evidence showed for either a breach of duty that proximately resulted in the plaintiff’s injury.” Clark, 514 So.2d at 1318.
We can find no evidence in the record to support a finding that either Hall or Nichol assumed or had been delegated a personal or a statutory duty to provide for Hough’s safety. In fact, ALFAB had a delegated safety coordinator, who was not made a party to this suit. We, therefore, conclude that the trial court did not err in entering summary judgment in favor of Hall or Ni-chol.
Therefore, the summary judgments in favor of St. Paul Insurance and Hall and Nichol are due to be, and they are hereby, affirmed.
87-1118 AFFIRMED.
87-1545 AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.

. A "grinder” uses a hand grinder to remove excess metal from handrails and wall rails.

. No defendants were ever substituted for the fictitiously named parties in Hough’s complaint.