JONES, Justice.
In a co-employee suit, the trial court, entered summary judgments in favor of the defendants, United States Fidelity and Guaranty Company, Inc. (“USF & G”), and Harry Howell, president of Howell Plywood Company. The plaintiff, Willie Earl Walker, had lost three fingers in a Howell Plywood chipper that he was attempting to clean. Walker appeals only from the judgment in favor of Howell.
On appeal, the sole issue is whether the evidence, either that in support of, or that against, the motion for summary judgment presents a triable question of fact.[1] Because we hold, after reviewing the evidence in a light most favorable to the non-moving party, that there was no genuine issue of material fact and that Howell was entitled to a judgment as a matter of law, we affirm.
Walker alleged in his complaint that Howell was responsible for the safety of his employees and, therefore, that Howell had a duty to use reasonable care in seeing that his employees had a safe place to work. Walker further alleged that Howell breached the duty of care he owed to Walker because, Walker says, the chipper on which Walker was injured was improperly maintained, defective, and unreasonably *19 dangerous. Howell’s answer included an allegation of immunity “under Alabama law,” and asserted the defenses of contributory negligence and assumption of the risk.
The trial judge entered the following order:
“I have considered the memoranda, oral arguments, and other submissions of counsel. I have granted the [defendant Howell’s] motion to strike the affidavit of John E. Sims, which contains opinion testimony concerning the defendant’s responsibility for safety matters, which I find outside the scope of his tendered area of expertise as an engineer. The deposition testimony of Harry Howell established that Bo Thaggard had respons-bility for safety matters, including the conduct of safety inspections. I find that there is no material issue of fact as to the defendant’s alleged duty owed to the plaintiff to provide him with safe equipment. I have granted summary judgment to the defendant....”
The documents upon which the parties based their contentions and upon which the trial judge entered summary judgment in favor of Howell were the pleadings, Howell’s motion for summary judgment and his supporting memorandum of law, Walker’s affidavit in opposition to the motion and his supporting memorandum of law, and the depositions of Howell and Walker.
The only testimony relied upon here by Walker to attack Howell’s summary judgment is contained in Howell’s deposition. Our attention is specifically called to the following portion of Howell’s deposition:
“Q. What did [Bo Thaggard’s] duties involve as [the employer’s] safety director?
“A. [Howell:] Staying familiar with the OSHA law, conducting safety meetings, reviewing the OSHA file, which would include the accident reports, and that would probably mean that he occasionally attended some seminars, maybe if any insurance inspectors came by or that kind of thing, he would meet with them.
“Q. Okay.
“A. I think that’s the highlight of it.
“Q. Would he actually make safety inspections throughout the mill while it was operating?
“A. Well, [Thaggard] is in the mill on a daily basis and is looking at things. It’s not recorded on January 15th T made an inspection,’ but he is there looking.
“Q. In 1983, though, I’m just trying to understand, he did not have a specific safety routine that he would go through either daily or weekly or monthly or — do you understand what I’m trying to say— as opposed to just keeping his eyes out in a general sense?
“A. The general sense of keeping his eyes open would describe it better.
“Q. Now, if he saw, for example, an OSHA violation, would he have the authority to make a correction on the spot?
“A. On the spot or see that it was made. More specifically, he, in his conducting meetings, made that a responsibility of every employee to look out for things that might cause an accident and report it and look out for the fellow men and look out for themselves. That’s what he has always stressed.
“Q. If an employee saw a condition that they perceived or considered to be unsafe, would they go to their immediate supervisor and report that as opposed to, say, coming to you?
“A. No, they wouldn’t come to me. I would talk to anybody that came to me but their procedure would be to report it to their supervisor. If that didn’t take care of it, they were instructed to report it to Bo [Thaggard]. Those were his instructions.
“Q. Did Bo [Thaggard] ever have any specific time or procedure or routine that he would meet with you to discuss safety?
“A. Well, his office is right next door to mine and we confer on various things on a regular basis. If the number of accidents were up or we have had an accident or OSHA had been by or whatever, I’m sure we would have a conversation.
“Q. Is it fair to describe that relationship, though, to be more of an informal *20 one as opposed to a more regular type of systematic discussion?
“A. Well, I would describe it on an as needed basis.
“Q. That’s what I was trying to understand. And there is not a regularly scheduled day of the week or month that you have?
“A. No.
“Q. How often were safety meetings conducted in 1983? Was there a regular schedule for that or would that be more as needed?
“A. That would be more as needed.
“Q. If you, as president, saw a procedure or practice that you thought was unsafe, would you have the authority to correct it on the spot or to order a correction?
“A. I would certainly order a correction.
“Q. I guess as president you would be allowed to do that, wouldn’t you?
“A. Yes.”
Specifically, Walker’s counsel points to that part of Howell’s answer saying “It’s not recorded on January 15th T made an inspection,' but he is there looking” as meaning that Howell had the duty, or at the very least assumed the duty, to inspect the premises and to provide Walker a safe place to work. Even if we assume that Howell’s deposition testimony was to the effect that he made a plant inspection on January 15, this tidbit of information falls far short of informing the factfinder of the relevance of “January 15th” (the accident occurred on September 1, 1983), or of the relevance of such an inspection as it relates to the accident in question.
A thorough reading of Howell’s deposition testimony discloses that he, as president of the company, exercised general supervision over the entire plant operation, including the activities of the company’s safety director;, but that the day-to-day safety functions were delegated to, and exercised by, Bo Thaggard, the company’s safety director. The fact that Howell, as president, exercised supervisory authority over all the company’s employees, including Thaggard, and that he, as president, made an occasional plant inspection, without more, is insufficient evidence upon which to hold Howell liable as a co-employee for an industrial accident caused by another co-employee’s turning on an electric chipper while the injured employee was cleaning trash from under the chipper. Hough v. Nichol, 549 So.2d 466 (Ala.1989); Malone v. Beggerly, 545 So.2d 1320 (Ala.1989); and Stallworth v. Holt, 534 So.2d 1063 (Ala.1988).
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.

. Because this case was filed before June 11, 1987, the "scintilla of evidence” rule is applicable, and the applicable standard of review is the common law "negligence” rule. See Ala.Code 1975, § 12-21-12 and § 25-5-11.