Plaintiff James L. Creel appeals from a summary judgment in favor of defendant Robert Bridewell in a co-employee suit.
After sustaining injuries to his hand while working for Pellex, Inc., as a machine operator, Creel brought suit under § 25-5-11, Code of Alabama 1975 (part of the Workmen's Compensation Act), against several defendants, including Robert Bridewell, a part-owner of Pellex, alleging, interalia, that his injuries were proximately caused by their failure to provide him with a reasonably safe workplace. The trial court granted Bridewell's motion for summary judgment, and Creel appeals. This appeal involves only Creel's claim against co-employee Bridewell.
This action was pending in the courts of this state prior to June 11, 1987; therefore § 12-21-12, Code of Alabama, 1975, as amended, does not apply, and the applicable standard of review, which must be read in the context of the scintilla evidence rule, is as follows:
Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party.Fountain v. Phillips, 404 So.2d 614 (Ala. 1981); *Page 96 Autrey v. Blue Cross Blue Shield of Alabama,481 So.2d 345 (Ala. 1985).
Recently, in Harris v. Hand, 530 So.2d 191 (Ala. 1988), we articulated in detail the applicable law governing co-employee suits arising prior to the 1985 amendment to § 25-5-11, Code of Alabama 1975. See Reed v.Brunson, 527 So.2d 102 (Ala. 1988), for the applicable law governing co-employee suits arising after the amendment. In Harris, we stated:
 "A co-employee is not liable to another employee unless he (1) voluntarily assumed or (2) was delegated his employer's duty to provide a reasonably safe workplace. Fontenot v. Bramlett, 470 So.2d 669, 672 (Ala. 1985). A plaintiff must also prove that his co-employee breached the assumed (or delegated) duty by failure to exercise reasonable care and that this breach proximately caused injury to the plaintiff. Clark v. Floyd, 514 So.2d 1309, 1316 (Ala. 1987). [emphasis added in Harris]
 " '[T]he fact that a [co-employee] is in an administrative or supervisory position alone does not make that person liable.' Clements v. Webster, 425 So.2d 1058, 1060 (Ala. 1982). Neither does '[t]he imposition of liability . . . arise out of . . . the amount of control . . . which the coemployee exerts at the workplace,' Clark, 514 So.2d at 1316, or 'his overall role with regard to the jobsite,' Welch v. Jones, 470 So.2d 1103, 1110
(Ala. 1985). As this Court stated recently:
 " ' "Liability of a co-employee must be predicated upon the breach of a personal duty owed to the injured employee and not upon general administrative responsibilities of the third-party co-employee defendant. It is insufficient, for example, to merely allege and prove a generalized duty of a co-employee to provide the injured employee with a reasonably safe place to work. An employee is not liable for injuries to another employee because of the failure of the employer to furnish a safe place to work or suitable appliances or instrumentalities. 57 C.J.S. Master and Servant 578 n. 33, and accompanying text at 350.
 " ' "The burden is upon the injured party to prove with specificity the defendant's delegated or assumed duty and its breach for which recovery is sought. The position he occupies, without more, cannot serve as a basis for a co-employee's liability."
 " 'Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 347 (Ala. 1980) (Jones, J. concurring in the result). See also Kennemer v. McFann, 470 So.2d 1113
(Ala. 1985); Welch v. Jones, 470 So.2d 1103 (Ala. 1985); Fontenot v. Bramlett, 470 So.2d 669 (Ala. 1985).'
 "Rice v. Deas, 504 So.2d 220, 221 (Ala. 1986) ('employee' and 'employer' emphasized in Rice; other emphasis added [in Harris])."
The dispositive issue is whether the record contained any evidence tending to show that Bridewell owed Creel a personal duty to provide him with a reasonably safe workplace.
Relying on his affidavit and deposition, Bridewell argued in his motion for summary judgment that he did not owe Creel such a duty. In his affidavit, Bridewell stated that he neither hired Creel nor trained him in the manner or method in which Creel was to perform his duties; that he had general, administrative responsibilities for plant safety; that the specific responsibilities to ensure a safe workplace were delegated to other employees; and that he had never undertaken personally to supervise Creel as to his day-to-day duties. In his deposition, Bridewell testified that supervisors at each shift and maintenance workers were responsible for checking safety devices and for ensuring the proper functioning of emergency stop buttons on machines such as the one Creel was using at the time of his injury. Bridewell stated that occasionally he would alert supervisors as to unsafe conditions that he had noticed. He also stated that, at the time of Creel's injury, he was in the process of preparing a general safety manual pursuant to the suggestions of Safe State, a safety consulting service operated by the University of Alabama. *Page 97 
Creel countered Bridewell's motion for summary judgment by offering, inter alia, the depositions of Creel; Jerrell Sanders, vice-president and plant manager of Pellex; Rick Roubdioux; and Robert Bridewell; and the affidavit of Fred Melof, a safety expert. Creel testified that his job at Pellex involved hand-feeding plastic into an extruder hopper and that his injury occurred when plastic balled up in the machine, and then popped out, catching his arm and pulling him down into the extruder. According to Creel, when he pushed the emergency stop button in an effort to disengage the machine, the stop button apparently malfunctioned, because the machine failed to shut off. Sanders stated that, while as plant manager he had some safety responsibilities, Robert Bridewell was primarily responsible for handling safety and that one of Bridewell's duties at Pellex was to serve as the safety director. Roubdioux testified that Robert Bridewell would visit the plant two or three times a day. Robert Bridewell stated that he would walk through the production section of the plant once a week or once every two weeks, that he had authority to order changes in unsafe equipment, and that periodically he would in fact direct others to make changes. On one such occasion, following Creel's accident, in response to a recommendation by a member of a safety committee, Robert Bridewell ordered guards placed on the ends of extruders to prevent hot plastic from spewing out. Robert Bridewell further testified that, before purchasing it, he examined the machine that caused Creel's injuries and "it appeared to be safe."
Mr. Melof reviewed the depositions of Robert Bridewell and others and, based on those depositions, he rendered the following opinions:
 "That Robert Bridewell . . . assumed and [was] responsible for safety training, and safety enforcement and implementing safety practices and procedures at the Pellex Plant in Woodstock, Alabama prior to the injury of James Creel in September of 1983. . . . That Robert Bridewell . . . failed to provide adequate safety for the employees at the Pellex Plant in Woodstock, Alabama prior to September of 1983.
". . .
 "These opinions are based on the following; that Robert Bridewell . . . had the authority to implement safety procedures and to exercise safety responsibility at the Pellex Plant. That Robert Bridewell . . . [was] in the Pellex Plant as evidenced by the deposition testimony of Rick Roubdioux on a basis of at least two (2) or three (3) times a day. That [Robert Bridewell] had an opportunity and did in fact observe the operation of the material being fed into the feeder hopper. [Robert Bridewell] knew or should have known that the feeder hopper was inadequately guarded in that it would allow an individual to become entangled in the material and pull him into the hopper auger. That [Robert Bridewell] knew or should have known that there were no warnings anywhere on the hopper with respect to keeping hands away from the auger and failed to provide such warnings. Further, that [Robert Bridewell] knew or should have known that there was no proper tool supplied for use by the feeder operators to push down the material into the auger and that they were using their hands to do so.
". . .
 "Further Mr. Robert Bridewell . . . [failed] to provide adequate safety by allowing a machine to be unguarded. This is evidenced by the fact that the plaintiff James Creel was able to be pulled into this machine at the point of operation."
After reviewing the record in the light most favorable to Creel, we conclude that the trial court improperly granted summary judgment in Bridewell's favor. A duty to provide co-employees with a safe workplace naturally encompasses a duty to provide co-employees with machines that function properly and safely. The record contains evidence that Bridewell was Pellex's safety director, that he was familiar with the extruder hopper and had observed it in operation during inspections of the plant, and that he knew or should have known *Page 98 
that it was defective and therefore posed a safety risk to those co-employees, like Creel, who used it. This evidence presents a jury question as to whether Bridewell owed Creel a personal duty, either voluntarily assumed or delegated, to provide him with a safe workplace.
We note that the record is devoid of any evidence tending to show that Bridewell retained a duty to provide Creel with a safe workplace by ensuring his proper training. The record contains evidence indicating that others were given the responsibility for training Creel on the extruder. Dan Caine and Rick Roubdioux, both employees of Pellex who also worked as machine operators, testified in their depositions that Terry Self trained Creel to use the extruder machine. We further note that the record substantiates Robert Bridewell's testimony that other employees of Pellex were more directly responsible for ensuring the safety of workers. For instance, Roubdioux testified that the foreman and the plant superintendent were responsible for giving safety instructions and making necessary changes to improve safety. However, the evidence indicating that certain duties involving safety — training, instructing, and implementing changes — had been delegated to others does not detract from the evidence manifesting Bridewell's retention of a duty to provide Creel with a safe machine.
For the foregoing reasons, the summary judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.