536 So.2d 922 (1988)
Rodney Edward HAWKINS and Debra Ann Hawkins
v.
MONTGOMERY INDUSTRIES INTERNATIONAL, INC.; and B. Case Herring
86-1359.
Supreme Court of Alabama.
September 30, 1988.
Rehearing Denied December 23, 1988.
*923 Richard D. Bounds and Andrew T. Citrin of Cunningham, Bounds, Yance, Crowder, & Brown, Mobile, for appellants.
George M. Walker and Donald F. Pierce III of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, for appellees Montgomery Industries Intern., Inc., and Case Herring.
W. Boyd Reeves of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for appellees W. T. Neal, Jr., John S. Neal, John T. Miller, Mike Thompson, and Blaine Salter.
STEAGALL, Justice.
Plaintiffs, Rodney and Debra Hawkins, appeal from a summary judgment for defendants Montgomery Industries International, Inc. ("Montgomery Industries") and B. Case Herring on the Hawkinses' three-count complaint alleging 1) violation of the Alabama Extended Manufacturer's Liability Doctrine, 2) negligent design, manufacture, and/or sale of a "blowpipe system" and its component parts, and 3) wanton design, manufacture and/or sale of the "blowpipe system" and its component parts. In their amended complaint, the plaintiffs further alleged that the defendants failed to provide adequate warnings and/or instructions to prevent Rodney from being injured. We affirm.
Rodney was employed as a planer mill foreman at the T.R. Miller Mill Company ("T. R. Miller") in Brewton, Alabama. As planer mill foreman, Rodney was responsible for the operation of the planer mill and for the direction and supervision of approximately 18 employees. The function of the planer mill was to process rough lumber into a finished state. The rough lumber was run through a planer machine, which shaved off a certain amount of wood in order to make the wood smooth. The wood that was removed from the rough lumber was sucked from the planer machine by means of a fan mounted out in the mill. The suction that was created transferred the wood shavings into a cyclone that metered down into a high pressure blower. The blower would push the wood shavings down a small pipe, called a "blowpipe," into a receptacle, where the wood shavings could be removed from the premises by truck.
In October 1983, T.R. Miller employed Montgomery Industries to design and install a new suction system to accompany a new planer machine that was being installed. Montgomery Industries had designed and installed the previous suction system used by T.R. Miller.
Installation of the new suction system was completed in February 1984. Soon after installation was completed, the system became clogged, whereupon John Neal, production manager at T.R. Miller, contacted Montgomery Industries. Herring, a Montgomery Industries employee who designed and sold the suction system to T.R. Miller, returned to the mill to attempt to correct the problem. On at least one other occasion, a Montgomery Industries employee was called to the mill site to correct clogging problems. Both Montgomery *924 Industries and T.R. Miller management personnel were aware that suction systems of this variety were subject to periodic clogging difficulties. There is no indication from the record or the briefs of the parties that anyone authorized to work on the system other than Montgomery Industries had attempted to eradicate the clogging problems that allegedly plagued the new suction system.
On August 7, 1984, the blowpipe section of the suction system became clogged. After several attempts were made to blow the shavings out, using the systems fans, a decision was made to cut holes in the elevated blowpipe section (the blowpipe section consisted of an approximately 200-foot-long pipe elevated 18 to 20 feet off the ground) at 30-foot intervals and to insert a 3-inch fire hose in an attempt to flush the clogged system with water pressure. A similar method had been previously utilized to unclog other systems, but no evidence was presented that indicated that this particular method had been utilized on the blowpipe section of the suction system or that such a method was suggested or sanctioned by Montgomery Industries.
To work on the elevated pipe, T.R. Miller employees constructed a makeshift platform by placing lumber on a forklift and then raising the lumber to the desired height. From this platform, Rodney and Blaine Salter examined the pipe at one of the cut-out openings while other employees flushed the system with the fire hose. Between Rodney and the employees using the fire hose was a solid clog that prevented the flow of water through the pipe. After ordering the fire hose shut off, Salter used a four-foot stick to poke at one side of the shavings in an attempt to speed up the loosening process. Several employees, including Rodney, took turns reaching into the cut-out hole, removing debris and/or poking the clog with the four-foot stick. It was during this process that the T.R. Miller employees attained their goal of unclogging the blowpipe. The result, however, was that the water introduced into the system via the fire hose rushed through the hole cut out of the side of the pipe by the T.R. Miller employees, knocking those standing on the improvised platform, including Rodney, to the ground. As a result of his fall, Rodney was paralyzed from the chest down.
Rodney sued Montgomery Industries as the designer and constructor of the suction system, alleging that the system was defectively or negligently designed or constructed. He further alleged that Montgomery Industries was negligent in failing to provide adequate warnings and/or instructions in order to prevent such accidents from occurring. Also named as a defendant in the suit was Herring, as the Montgomery Industries employee responsible for the conceptualization of the suction system; seven co-employees; T.R. Miller's workman's compensation insurance carrier; and another manufacturer. Rodney Hawkins's wife, Debra, joined as a plaintiff, claiming damages for loss of consortium. After extensive discovery, Montgomery Industries and Herring filed separate motions for summary judgment. After oral argument and briefs had been filed in support of and in opposition to the motions, the trial court granted summary judgment in favor of Montgomery Industries and Herring. Summary judgment was made final pursuant to Rule 54(b), A.R.Civ.P. From that summary judgment and the denial of their motion to alter or amend the judgment, the Hawkinses appeal.
The trial court did not specify, in granting defendants' summary judgment motion, the underlying considerations it used in finding that there were no genuine issues of material fact; however, this is not required under Rule 56, Ala.R.Civ.P. The Hawkinses argue four errors allegedly committed by the trial court. Specifically, they argue that if the court granted summary judgment holding that the blowpipe system was not a "product" within the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), this constituted reversible error; that the trial court erred if it held that the Hawkinses had not produced a scintilla of evidence that the product was defective; that the trial court erred if it decided that the defects in the blowpipe system were not, as a matter of law, a *925 proximate cause of Rodney's injuries; and that if the court below found that the defendants may not be held liable under negligence and wantonness theories, this, too, would constitute reversible error.
This Court has often stated the principles governing summary judgment:
"`"Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.... `"If there is a scintilla of evidence supporting the position of the party against whom the motion for summary judgment is made, so that at trial he would be entitled to go to the jury, a summary judgment may not be granted.'"...
"`"On appeal from a summary judgment, this court must look to the same factors considered by the trial court in its ruling on the motion."'"
Moseley v. Lewis and Brackin, 533 So.2d 513 (Ala.1988). (Citations omitted.)
"`Rule 56, Ala.R.Civ.P., sets forth the two-part standard for granting summary judgment. The rule requires the trial court to determine: (1) that there is no genuine issue of material fact and, (2) that the moving party is entitled to judgment as a matter of law. This rule must be read in conjunction with the scintilla rule so that summary judgment will not be granted if there is a scintilla of evidence supporting the position of the opposing party.'"
Moseley v. Lewis and Brackin, supra. (Citation omitted.)
The AEMLD was established by the companion cases of Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976), and Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976). To establish liability under the AEMLD, a plaintiff is required to show:
"(1) [That he] suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
"(a) the seller is engaged in the business of selling such a product, and
"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.
"(2) Showing these elements, the plaintiff has proved a prima facie case although
"(a) the seller has exercised all possible care in the preparation and sale of his product, and
"(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller."
Casrell v. Altec Industries, supra, at 132; Atkins v. American Motors Corp., supra, at 141.
The Court in Atkins set out as an appendix § 402A of the Restatement (Second) of Torts (1965), along with the accompanying comments. Section g. of those comments, entitled "Defective condition," reads in pertinent part:
"The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.
"The burden of proof that the product was in a defective condition at the time that it left the hands of a particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion it was then defective, the burden is not sustained."
Atkins v. American Motors Corp., supra, at 146.
After a careful review of the record, it is clear to us that the blowpipe at the T.R. Miller planer mill was not defective within the meaning of the AEMLD. The condition on which the Hawkinses rely as indicating defectiveness, the clogging of the blowpipe system, had occurred on many previous occasions without any resulting personal injury or property damage. It cannot be, and is not, argued by the appellants that the supposedly defective condition was not contemplated by T.R. Miller or its employees when T.R. Miller contracted *926 to have the new blowpipe system installed by Montgomery Industries. The Court in Casrell, when asked "What is a defect?" answered:
"It has been held that the terms [defect and unreasonably dangerous] are synonymous, that is, defective means unreasonably dangerous and has no independent significance.
"Our answer is, a `defect' is that which renders a product `unreasonably dangerous,' i.e., not fit for its intended purpose, and that all `defective' products are covered....
"The product either is or is not `unreasonably dangerous' to a person who should be expected to use or to be exposed to it. If it is, it makes no difference whether it is dangerous by design or defect. The important factor is whether it is safe or dangerous when the product is used as it was intended to be used. However, danger may be obviated by an adequate warning. Comment i. of § 402A, Restatement of Torts 2d, states:
"`The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'
"`"Defective" is interpreted to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety. Comment g. of the Restatement says defective condition applies when, at the time the product leaves the seller's hands, it is in a condition not contemplated by the ultimate consumer.'"
Casrell v. Altec Industries, supra, at 133. (Citations omitted.)
The clogging experienced by the blowpipe system installed by Montgomery Industries was contemplated by T.R. Miller management personnel. In his deposition, Neal stated, when discussing the old system's problems with clogging, that he had "never seen one [a blowpipe] that didn't have a problem." Rodney, in his deposition, indicated that clogging of the old blowpipe system was a weekly occurrence:
"Q. How many occasions did that happen [clogging of the blowpipe] when you were the shift foreman over in the old planer mill, would you say?
"A. I don't know, sir. It'sover a year's time I couldn't give you a number.
"Q. Well, would it be something that happened once a week on the average?
"A. At least.
"Q. At least once a week?
"A. Yes, sir."
It is undisputed from the depositions that at least some clogging of the blowpipe system was contemplated by the parties before, during, and after the new system was installed. In fact, after the new system was installed, Montgomery Industries was summoned on numerous occasions to the mill site to unclog the blowpipe system, rather than have the mill employees themselves attempt to do it. From the evidence presented in the record, it is clear that the blowpipe system was fit for its intended, though not perfect, purposethat of removing the wood shavings from the planer machine.
However, it is true that the question of whether a product is "defective" and thus "unreasonably dangerous," or vice versa, is normally for the trier of fact, just as negligence, vel non, is in a traditional negligence case. There are exceptions. This Court, in Whatley v. Cardinal Pest Control, 388 So.2d 529 (Ala.1980), stated:
"[R]arely is summary judgment appropriate in a claim based upon negligence. Stated another way, this Court is firmly committed to a rule of extreme caution in its review of a summary judgment granted in a tort claim context. But not even the application of this rule can spare the plaintiff from the fate of summary judgment where, after opportunity for full discovery, the evidence, when viewed most favorably to the plaintiff under the scintilla rule, fails to raise a reasonable inference that the alleged negligence was *927 the proximate cause of the injuries complained of."
Such is the case here. After a thorough review of the record, viewing the evidence presented most favorably to the appellants and in light of the scintilla rule, we find that they have failed to provide a scintilla of evidence that the product supplied to T.R. Miller by Montgomery Industries was defective. Having so found, we pretermit any discussion of appellants' additional allegations of error, which are all predicated upon the idea that the product was defective.
AFFIRMED.
MADDOX and BEATTY, JJ., concur.
JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur in the result.

ON APPLICATION FOR REHEARING
STEAGALL, Justice.
This Court affirmed the summary judgment in favor of the defendants, Montgomery Industries and Herring, holding that the plaintiffs below, appellants Hawkins, had failed to provide a scintilla of evidence that the product supplied to T.R. Miller was defective. On rehearing, the Hawkinses argue that the Court's holding failed to dispose of one issue raised on appeal, specifically the allegation that the defendants failed to provide adequate warnings and/or instructions to prevent Rodney from being injured.
"It is well settled law that in order to make out a prima facie case of negligent failure to give adequate warning, the plaintiff must provide at least a scintilla of evidence that defendant breached a duty, and that the breach proximately caused plaintiff's injury. E.R. Squibb & Sons, Inc. v. Cox, 477 So.2d 963 (Ala. 1985). A manufacturer is under a duty to warn users of the dangerous propensities of a product only when such products are dangerous when put to their intended use. McCaleb v. Mackey Paint Mfg. Co., 343 So.2d 511 (Ala.1977). It is also well settled that a manufacturer is under no duty to warn a user of every danger which may exist during the use of the product, especially when such danger is open and obvious. General Electric Co. v. Mack, 375 So.2d 452 (Ala. 1979). The objective of placing a duty to warn on the manufacturer of a product is to acquaint the user with a danger of which he is not aware, and there is no duty to warn when the danger is obvious. Ford Motor Co. v. Rodgers, 337 So.2d 736 (Ala.1976)."
Gurley v. American Honda Motor Co., 505 So.2d 358, 361 (Ala.1987).
Where, as here, the product is not dangerous when put to its intended use, or where the danger is open and obvious, a manufacturer is under no duty to warn against the dangerous propensities of a product. Therefore, we find that, under the particular facts of this case, Montgomery Industries owed no duty to warn Rodney of any injuries he might receive from the acts engaged in.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.