KENNEDY, Justice.
Plaintiff Roy E. Thompson, Jr., appeals from a summary judgment in favor of the defendants, Liberty Mutual Insurance Company (“Liberty Mutual”); Houdaille Industries; and Jess Horton, Jim Hopkins, Edward Pascoe, and D.R. Hopkins, as co-employees. We affirm in part; reverse in part; and remand.
The issue is whether there was a scintilla of evidence creating any genuine issue of *131 material fact that would permit submission of the claims as to any of the defendants to the trier of fact.
On January 3, 1985, Roy E. Thompson, Jr., an employee of Steel City Bolt and Screw, Inc. (“Steel City”), sustained injuries to his left hand while operating a power press U-bolt machine manufactured by Houdaille Industries.[1] The end of the middle finger on his left hand was severed when he attempted to wipe shavings from the machine’s wheel. In October 1985, Thompson sued Liberty Mutual, alleging negligent inspection of the plant; Houdaille Industries, under the Alabama Extended Manufacturer’s Liability Doctrine; and co-employees Jess Horton, Jim Hopkins, Edward Pascoe, and D.R. Hopkins pursuant to Code 1975, § 25-5-11, alleging, inter alia, that the defendant co-employees had failed to provide him a safe place to work. The trial court entered summary judgment for all defendants. Thompson appealed.
Thompson alleged that Liberty Mutual negligently inspected the Steel City premises, and that its negligent inspection proximately caused him to be injured. Under Alabama law, “when an insurer undertakes to inspect an insured employer’s premises for safety, it assumes the duty of the insured employer to provide a safe place for its employees to work.” Armstrong v. Aetna Ins. Co., 448 So.2d 353, 355 (Ala.1983); Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971).
Liberty Mutual, relying on the affidavit of its employee Steve Robertson, argues that (1) the inspection of Steel City’s premises was conducted solely for the purpose of evaluating the company as a property insurance policyholder and not for the purpose of evaluating employee safety; (2) the inspection was completely voluntary, as no insurance policy was in effect at that time; (3) no inspection of the U-bolt machine was made; and (4) due to the stated purpose of the inspection, Thompson, as an employee, was not a member of the class of persons who were intended beneficiaries.
In this case, there was evidence that Liberty Mutual did conduct a voluntary inspection of the plant for the purpose of evaluating Steel City as an insurance policyholder. There was no evidence presented to indicate that Liberty Mutual performed a safety inspection of the machine or of the area where Thompson was working. In Barnes v. Liberty Mutual Ins. Co., 472 So.2d 1041 (Ala.1985), this Court held that proof of a voluntary safety inspection of the premises by the insurance carrier is insufficient to establish a negligent inspection, when that proof does not contain evidence of an undertaking by the insurance carrier to inspect the specific area of the plant where the injury occurred. Accordingly, the summary judgment is affirmed as to Liberty Mutual.
Thompson maintained that the U-bolt machine, designed and manufactured by Houdaille Industries, was defective and not reasonably safe. Thompson also alleged that Houdaille Industries failed to adequately warn the machine operator of the hazard involved in operating the U-bolt machine. In support of his allegations, Thompson submitted the affidavit of B.J. Stephens, a professor of mechanical engineering. Stephens testified as follows:
“It is my opinion that:
“1. The Di-Acro machine does not comply with the letter or spirit of either the ANSI [(American National Standards Institute) ] or OSHA [ (Occupational Safety, and Health Administration) ] Standards.
“2. The Di-Acro machine presents an unreasonable hazard to the operator.
“3. Point of operation guarding is not provided on the Di-Acro machine.
“4. Hand tools for the loading and unloading of parts or for the cleaning of the tooling were not provided as a standard feature of the Di-Acro machine or have been removed.
“5. Warning labels on the Di-Acro machine are placed such that during *132 operation they would either be covered by the operator's body or are attached to possibly unseen surfaces.
“6. The ‘power on/power off switch is located a distance more remote from the operator of the Di-Acro machine than is the ‘locking’ feed actuation switch.
“7. Other relevant industry standards were not followed with respect to either the instruction given to Mr. Thompson as the operator of the DiAcro machine nor with the present safeguarding of that machine for use by the operator.
“It is further my opinion that the unreasonably unsafe nature of this machine was plainly open and observable by anyone with knowledge, experience or training in such matters and in the identification of hazardous conditions in the workplace.”
Thompson argues that Stephens’s affidavit provides a scintilla of evidence, and, thus, precludes summary judgment for Houdaille Industries. In its motion for summary judgment, Houdaille Industries submitted the affidavit of Richard J. Flani-gan, its corporate product safety and reliability manager. Flanigan testified that “[tjhere were no manufacturing defects observable in the machine” and that “the warning decal ... was in place on the machine.”
It is evident, based on the conflicting expert opinions, that the facts were in dispute regarding the safe or unsafe condition of the U-bolt machine. Accordingly, as to Houdaille Industries, the summary judgment was improperly granted, and as to that defendant it is reversed.
Pursuant to Code 1975, § 25-5-11, Thompson sued co-employees Jess Horton, Jim Hopkins, D.R. Hopkins, and Edward Pascoe, alleging that his injuries were proximately caused by their failure to provide him a reasonably safe place to work. Under Alabama law, co-employee liability for negligently failing to provide subordinates with a reasonably safe place to work “may be imposed upon supervisory personnel if it is proved that, as a part of their responsibilities, the defendant supervisory personnel were delegated or assumed their employer’s duty to provide a safe work place or a material portion of that duty.” Fontenot v. Bramlett, 470 So.2d 669, 672 (Ala.1985); see also Harris v. Hand, 530 So.2d 191, 192 (Ala.1988). “A co-employee cannot be held liable merely because he has a general administrative responsibility; the fact that a person is in an administrative or supervisory position alone, does not make that person liable.” Clements v. Webster, 425 So.2d 1058, 1060 (Ala.1982). “The imposition of liability on a co-employee ... [is] not automatic; it does not arise out-of one’s job title or even out of the amount of control, in and of itself, which the co-employee exerts at the work place.” Clark v. Floyd, 514 So.2d 1309, 1316 (Ala.1987). “[I]t is neither [a co-employee’s] general [superintendent position] nor his overall role with regard to the jobsite that imposes upon him an individual duty of due care with respect to the safety of the ... plaintiff.” Welch v. Jones, 470 So.2d 1103, 1110 (Ala.1985). “The position he occupies, without more, cannot serve as a basis for a co-employee’s liability.” Fireman’s Fund American Ins. Co. v. Coleman, 394 So.2d 334, 347 (Ala.1980) (Jones, J., concurring in the result); Rice v. Deas, 504 So.2d 220, 221 (Ala.1987).
Relying on their affidavits, co-employees D.R. Hopkins, Ed Pascoe, and Jess Horton asserted that they did not owe Thompson such a duty. In their affidavits, each stated that he was not involved with the supervision, training, or conducting of safety programs for hourly employees, but that his responsibilities were purely administrative. Each of the affidavits stated:
“I have never been delegated nor have I ever assumed the company’s duty on a personal basis to provide the employees at the plant with a safe place to work. The only connection that I have with safety is purely administrative in nature.”
Upon reviewing the record, we conclude that the trial court properly entered the summary judgment as to Pascoe, and as to him it is affirmed. However, as *133 to D.R. Hopkins, a review of the record reveals evidence that he assumed a personal duty to provide a reasonably safe workplace. The evidence indicates that he attended and presided over regular safety meetings; that he had knowledge of a prior accident involving the same U-bolt machine; that he had sent memoranda addressed to plant and warehouse personnel regarding safety; and that he was the only member of management to sign the safety program. We conclude that the summary judgment as to D.R. Hopkins was improperly granted, and as to him it is reversed.
Jess Horton was the operations manager at Steel City, and he was responsible for the implementation of O.S.H.A. regulations. On May 9, 1984, Horton notified Steel City employees by memorandum that Safe State, a “confidential consulting service of the University of Alabama College of Continuing Studies,” would be conducting a “complete onsite consultation safety and health survey.” The memorandum also stated that he agreed to “voluntarily eliminate the serious hazards identified through the onsite consultation survey.” The Safe State survey, dated June 8, 1984, identified three power presses in the plant, one of which was the Di-Acro U-bolt machine, that were “serious hazards” because there was “no point of operation guarding” on them. The report stated: “Point of operation guards should be installed on each of these presses. Guarding that would be acceptable and comply with the OSHA standards was discussed during the consultative visit.... It was indicated by the client [Steel City] representatives that they would rather use guarding than attempt to use the pull-out devices.” However, Horton stated in his deposition that Safe State had never identified this U-bolt machine as a problem.
From this, we conclude that there was a scintilla of evidence that Horton had been delegated or had assumed a duty to provide a safe workplace. Therefore, summary judgment as to Jess Horton was improperly granted, and as to him it is reversed.
Jim Hopkins, the plant manager at Steel City, was in charge of the work and activities of the hourly personnel. There was evidence that Hopkins had a duty to provide a safe workplace. It is undisputed that he gave the specific orders for Thompson to operate the U-bolt machine on the day of the injury. Hopkins trained Thompson and supervised his operation of the U-bolt machine. Hopkins argues that he is excused from liability, however, because, he says, Thompson was guilty of contributory negligence as matter of law.
In Knight v. Seale, 530 So.2d 821, 824 (Ala.1988) (quoting Hatton v. Chem-Haulers, Inc., 393 So.2d 950, 954 (Ala.1980)), this Court enumerated the elements necessary to prove contributory negligence: “ ‘(1) knowledge of the condition; (2) an appreciation of the danger under the surrounding circumstances; and (3) a failure to exercise reasonable care by placing oneself in the way of danger.’ ”
Jim Hopkins testified that he could not recall an instance where he had instructed Thompson not to wipe off shavings while the machine was in operation. Therefore, the question of whether Thompson had knowledge of, or appreciated, the danger under the surrounding circumstances was left unanswered. In order to find contributory negligence as a matter of law, all three elements enumerated in Knight, supra, must be present and undisputed. We conclude that the summary judgment was improperly entered as to Jim Hopkins, and as to him it is reversed.
Therefore, the judgment is affirmed in part and reversed in part, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ„ concur.

. This cause of action arose prior to the February 1, 1985, effective date of the 1984 amendment to Code 1975, § 25 — 5—11(c).