PER CURIAM.
The plaintiffs, Rodney Edward Hawkins and his wife Debra Ann Hawkins, appeal from a summary judgment for defendant Arthur J. Gallagher and Company (“Gallagher”) on the Hawkinses’ claim of negligent inspection by Gallagher of Rodney Hawkins’s workplace.
Mr. Hawkins, at age 31, was paralyzed from the chest down while working at the T.R. Miller Mill Company in Brewton, Alabama. The injury occurred when he fell from a platform while repairing an elevated pipe. Gallagher was the workmen’s compensation administrator for the mill company and performed safety inspections of the mill.
Besides Gallagher, the Hawkinses also sued Montgomery Industries, Inc., the manufacturer of the elevated pipe; Case Herring, an employee of Montgomery Industries; Lumber Systems, Inc., the manufacturer of the planer mill; and five co-employees. The trial court entered summary judgment for Montgomery Industries, Case Herring, and Lumber Systems, and denied summary judgment motions filed by the five co-employees. The Hawkinses did not appeal the summary judgment for Lumber Systems. This Court affirmed the summary judgment for Montgomery Industries and Case Herring. Hawkins v. Montgomery Industries Int’l, Inc., 536 So.2d 922 (Ala.1988). This appeal involves only the summary judgment entered for Gallagher.
The T.R. Miller Mill Company processed lumber into a finished state. The lumber was run through a planer machine, creating wood shavings, which were, suctioned through a blowpipe into a collection bin. The blowpipe was 200 feet long and 18-20 feet above the ground. On the day' of Hawkins’s injury, the blowpipe became clogged. To unclog the system, holes were cut in the pipe at 30-foot intervals and a fire hose was inserted to try to flush out the system. To work on the pipe, T.R. Miller employees, including Hawkins, stood on a makeshift platform composed of a stack of lumber placed on a forklift. While examining the pipe, Hawkins found a piece of iron clogging the system. As Hawkins pulled out the piece of iron, the water that had been flushed into the pipe surged out of the hole cut in the side of the pipe and knocked Hawkins off the platform onto the ground. Hawkins was paralyzed as a result of the fall.
The injury occurred on August 7, 1984, before the effective date of the 1984 amendment to Code 1975, § 25-5-11, part of the Workmen’s Compensation Act; that amendment limited the liability of workers’ compensation carriers in direct actions to injuries caused by “willful conduct.” This Court had held in Johnson v. American Mutual Liability Insurance Co., 394 So.2d 1 (Ala.1980), and Fireman’s Fund American Insurance Co. v. Coleman, 394 So.2d 334 (Ala.1980), that the blanket immunity granted to workmen’s compensation carriers under the 1975 version of the Act was unconstitutional, and, thus, that suits for negligent inspection by such carriers were possible.
In a suit against a workmen’s compensation carrier for a negligent safety inspection, the plaintiff must show:
“(1) that the defendant had a duty or assumed a duty by voluntarily undertaking the inspection; (2) the scope of that duty; (3) whether the duty was breached; (4) whether there was damage or injury; *120 and (5) whether the injury was proximately caused by that breach.”
Barnes v. Liberty Mutual Insurance Co., 472 So.2d 1041, 1042-43 (Ala.1985). The elements at issue in this ease are whether the duty was breached and, if so, whether the breach-was the proximate cause of the injury.
The Hawkinses claim that Gallagher was negligent in not discovering the absence of proper equipment for working at heights. In prior negligent inspection eases, this Court has found that the hazards to be reported are those “which are observed and appreciated, or which should have been observed and appreciated.” Proctor & Gamble Co. v. Staples, 551 So.2d 949 (Ala.1989) (citing Fireman’s Fund American Insurance Co. v. Coleman, 394 So.2d 334, 349 (Ala.1980) (Jones, J., concurring)); see also Ritchie v. Bullock, 529 So.2d 916 (Ala.1988). The Haw-kinses contend that Gallagher’s representative, Larry Alverson, should have recognized the hazardous use of forklifts with lumber stacks on them for working at heights, because, they say, it was a common practice at the mill to use forklifts in such a way and because, they add, it was obvious that working at heights was required in the mill.
Gallagher claims that Alverson never saw or had the opportunity to observe the practice of using lumber stacks on forklifts. Alverson did observe the general use of forklifts for handling materials and made the following recommendation as to their safe use:
“The use of forklift vehicles, and industrial truck yard vehicles, are used extensively in all material handling operations throughout most work areas of the mill. A formalized safety program should be instituted for existing drivers, and new drivers of the industrial trucks and forklifts. The formalized training should include all of the basic safety rules and regulations, proper maintenance and repair, instructions, as well as exhibit a safe use of the vehicle, under all work task conditions.” (C.R. 1704, 1705, 1733).
He also observed and reported an employee walking on a beam at a height of 12 feet without the use of any platform and made the following recommendation with respect to walking or moving on elevated equipment:
“During our visit we observed an employee walking across an T beam to unjam some lumber. A slip on the T beam could result in a fall of approximately 12 feet which would seriously injure the employee. Strict management procedures should insure that no employees walk or move on the equipment that directly exposes them to a fall from an elevated height. Additionally, proper walkways should be provided so that employees may reach all necessary parts of the production line without having to walk on machinery or equipment.” (C.R. 1793)
While these recommendations do not specifically concern the use of forklifts and lumber stacks as an elevated platform, they do address the only observed conditions of possible relevance to this accident. There is no evidence that Alverson ever saw forklifts being used as platforms or that forklifts were even used as such during any of his inspections. There was no evidence indicating that any safety inspection was negligently performed and, thus, no evidence that Hawkins was injured as a result of a negligent inspection by Gallagher. Because there exists no genuine issue of material fact, the summary judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.