KENNEDY, Justice.
Rodney and Deborah Hawkins filed an action against John R. Miller, W.T. Neal, Jr., John S. Neal, Mike Thompson, and Blaine Salter, all of whom were co-employees of Rodney Hawkins.[1] The Hawkinses alleged that these co-employees assumed or were delegated their employer’s duty to provide Rodney Hawkins a safe place to work; that they breached that duty; and that that breach led to his being injured. The trial court entered a summary judgment for the defendants and made that judgment final pursuant to Rule 54(b), A.R. Civ.P.
In Hawkins v. Montgomery Industries International, Inc., 536 So.2d 922 (Ala. 1988), this Court described both the background to the accident and the accident that serves as the basis of the Hawkinses’ claim:
“Rodney was employed as a planer mill foreman at the T.R. Miller Mill Company (“T.R. Miller”) in Brewton, Alabama. As planer mill foreman, Rodney was responsible for the operation of the planer mill and for the direction and supervision of approximately 18 employees. The function of the planer mill was to process rough lumber into a finished state. The rough lumber was run through a planer machine, which shaved off a certain amount of wood in order to make the wood smooth. The wood that was removed from the rough lumber was sucked from the planer machine by means of a fan mounted out in the mill. The suction that was created transferred the wood shavings into a cyclone that metered down into a high pressure blower. The blower would push the wood shavings down a small pipe, called a ‘blowpipe,’ into a receptacle, where the wood shavings could be removed from the premises by truck.
[[Image here]]
“On August 7, 1984, the blowpipe section of the suction system became clogged. After several attempts were made to blow the shavings out, using the systems fans, a decision was made to cut holes in the elevated blowpipe section (the blowpipe section consisted of an approximately 200-foot-long pipe elevated 18 to 20 feet off the ground) at 30-foot intervals and to insert a 3-inch fire hose in an attempt to flush the clogged system with water pressure. A similar method had been previously utilized to unclog other systems, but no evidence was presented that indicated that this particular method had been utilized on the blowpipe section of the suction system ...
“To work on the elevated pipe, T.R. Miller employees constructed a makeshift platform by placing lumber on a forklift and then raising the lumber to the desired height. From this platform, Rodney and Blaine Salter examined the pipe at one of the cut-out openings while other employees flushed the system with the fire hose. Between Rodney and the employees using the fire hose was a solid clog that prevented the flow of water through the pipe. After ordering the fire hose shut off, Salter used a four-foot stick to poke at one side of the shavings in an attempt to speed up the loosening process. Several employees, including Rodney, took turns reaching into the cutout hole, removing debris and/or poking the clog with the four-foot stick. It was during this process that the T.R. Miller employees attained their goal of unelog-ging the blowpipe. The result, however, was that the water introduced into the system via the fire hose rushed through the hole cut out of the side of the pipe by the T.R. Miller employees, knocking those standing on the improvised platform, including Rodney, to the ground. As a result of his fall, Rodney was paralyzed from the chest down.”
536 So.2d at 923-24.
The Hawkinses filed their action on May 7, 1985; therefore, the applicable standard *338 for judging the sufficiency of evidence is the “scintilla rule.” Ala.Code 1975, § 12-21-12. They allege that the co-employees either accepted or were delegated the employer’s statutory duty imposed by Ala.Code 1975, § 25-1-1, to provide a reasonably safe place to work and that those co-employees breached that duty by failing to provide Rodney Hawkins safe and adequate equipment and by failing to implement safety rules. The co-employees contend both that Hawkins was contributorily negligent as a matter of law and that they had no duty to Hawkins or, alternatively, that they did not breach any duty that they had. Because the accident occurred in August 1984, the 1985 amendment to Ala. Code 1975, § 25-5-11, is inapplicable; that amendment provides that a plaintiff must prove willful conduct in order to maintain a co-employee action. See, e.g., Williams v. Price, 564 So.2d 408 (Ala.1990).
In order for the co-employees to show that Hawkins was contributorily negligent as a matter of law, they must show that he (1) had knowledge of the condition; (2) appreciated the danger under the surrounding circumstances; and (3) failed to exercise reasonable care by placing himself in the way of the danger. Durden v. Gaither, 504 So.2d 258, 260 (Ala.1987). Furthermore, for us to determine that Hawkins was contributorily negligent as a matter of law, the facts must be such that all reasonable men must draw the same conclusion therefrom, id. at 260; the determination is for the jury when reasonable minds may fairly differ on the question. Id. Also, “contributory negligence is for the jury to determine when there is a scintilla of evidence to the contrary.” Id.
To support their argument regarding contributory negligence, the co-employees cite Gray v. Rider, 510 So.2d 209 (Ala. 1987), and George v. Alabama Power Co., 402 So.2d 939 (Ala.1981). Both cases are inapposite, because they do not base their holdings on contributory negligence but instead make holdings addressing the issue of duty or breach of duty. The co-employees do not make arguments that demonstrate that no genuine issue of material fact exists as to the three elements of contributory negligence; to the contrary, their argument — that because Hawkins was a foreman none of them owed him a duty to provide safe and adequate equipment — is actually an argument that they did not have a duty to provide Hawkins a reasonably safe place to work. Although the evidence indicates that Hawkins was on the elevated lumber when it fell and thereby may have had knowledge of the condition that caused the injury, the evidence is not such that all reasonable minds would agree that Hawkins appreciated the danger under the circumstances and that he failed to exercise reasonable care by placing himself in the path of danger. The co-employees are not entitled to a summary judgment based on their defense of contributory negligence.
Relying primarily on Malone v. Beggerly, 545 So.2d 1320 (Ala. 1989), the trial court granted the co-employees’ motion for summary judgment. The co-employees all work in supervisory positions at T.R. Miller. Under Alabama law, co-employee liability for negligently failing to provide a reasonably safe place to work may be imposed if an employee-plaintiff proves that, as part of the co-employees’ responsibilities, they were delegated or assumed their employer’s duty, or a material portion of that duty, to provide a safe place to work. Thompson v. Liberty Mutual Insurance Co., 552 So.2d 129, 132 (Ala.1989). Hawkins must show that the co-employees’ duty was a personal duty to him. Creel v. Bridewell, 535 So.2d 95 (Ala.1988).
Furthermore, we have written:
“ ‘A co-employee cannot be held liable merely because he has a general administrative responsibility; the fact that a person is in an administrative or supervisory position alone, does not make that person liable.’ Clements v. Webster, 425 So.2d 1058, 1060 (Ala.1982). ‘The imposition of liability on a co-employee ... [is] not automatic; it does not arise out of one’s job title or even out of the amount of control, in and of itself, which the co-employee exerts at the work place.’ Clark v. Floyd, 514 So.2d 1309, 1316 (Ala.1987). *339 ‘[It is neither [a co-employee’s] general [superintendent position] nor his overall role with regard to the jobsite that imposes upon him an individual duty of due care with respect to the safety of the ... plaintiff.’ Welch v. Jones, 470 So.2d 1103, 1110 (Ala.1985). ‘The position he occupies, without more, cannot serve as a basis for a co-employee’s liability.’ Fireman’s Fund American Ins. Co. v. Coleman, 394 So.2d 334, 347 (Ala. 1980) (Jones, J. concurring in the result); Rice v. Deas, 504 So.2d 220, 221 (Ala. 1987).”
Thompson, 552 So.2d at 132.
Hawkins argues that the trial court’s use of Malone v. Beggerly was improper, because, he says, that case is factually distinguishable from his own. In Malone, William Earl Malone filed an action that included as defendants five of his co-employees. Malone was injured while he was attempting to move a heavy compressor motor. The trolley selected for moving the compressor motor was not strong Onough to hold the compressor’s weight, and the motor fell, injuring Malone. The eo-em-ployees that Malone sought to hold liable were J.R. Beggerly, plant manager; Jerry Stewart, assistant plant manager; Randolph Somner, maintenance superintendent; and Anderson Stubbs and Robert Tingle, assistant maintenance superintendents. The trial court entered a summary judgment for all of the co-employees, and we affirmed that judgment, except as to Stubbs, who we held owed a duty to Malone, because Stubbs had been delegated the duty of identifying the hazard that caused Malone’s injury.
Hawkins argues that in Malone, Malone was injured by a very specific hazard, an insufficiently strong trolley. Stubbs was responsible for ensuring that Malone’s foreman performed an analysis that would identify that risk, but the other co-employees had more general safety duties. Accordingly, Hawkins contends, only Stubbs could have been liable, because only Stubbs had been delegated the specific duty of ensuring the safety of Malone’s workplace while Malone was engaged in the type of activity that caused his injury. However, Hawkins argues, in his case the hazard that caused his injury, working at heights, was the type of hazard that each of the co-employees owed a duty to identify; that is, that the hazard that caused his injury did not arise out of the specific task of unclogging the blowpipe, but from the more general danger posed by working on unguarded platforms at heights. Hawkins argues that, unlike the plaintiff in Malone, he was injured not because the wrong equipment was chosen, but because T.R. Miller did not have the equipment from which employees could safely work at such heights. Unlike the very specific duty in Malone, Hawkins argues, each of the defendants in the instant ease was responsible for ensuring that the employees of the mill had the equipment they needed to safely do their assigned tasks.
We reject this argument. Although Hawkins’s remarks concerning Malone are proper, his attempt to distinguish that case fails. He would have us hold that Malone is inapposite because in his case all the co-employees owed a duty to him because he was working on an unguarded platform at a 20-foot height and that all the co-employees had either assumed or were delegated a duty to provide safe equipment to an individual who worked at such a height. To so hold would in effect establish a duty to a class of individuals at T.R. Miller, those who work at heights, and such a holding would allow Hawkins to circumvent the fundamental requirement in co-employee cases that the assumed or delegated duty be a personal duty to the plaintiff. Creel, supra.
To determine whether the co-employees assumed or were delegated the duty to provide Hawkins safe and adequate equipment or failed to implement safety rules, we must review the record as to each co-employee.
John R. Miller was the president of T.R. Miller at the time of Hawkins’s injury. He, with executive vice president W.T. Neal, Jr., undertook to establish the safety policies at T.R. Miller. Testimony indicated that Miller would sometimes walk through the planer mill, as well as other parts of *340 the mill, and that if he saw what he considered to be unsafe equipment or practices, he would act to correct the problem. That testimony and, indeed, the remainder of the record does not indicate that Miller assumed or was delegated a personal duty to Hawkins. No evidence indicates that he knew Hawkins was working on the elevated lumber to unclog the blowpipe. Miller, as the president of the company, was in a position similar to that of defendant Beggerly in Malone, 545 So.2d at 1321. The trial court properly entered the summary judgment as to Miller, and as to him that judgment is due to be affirmed.
W.T. Neal is the executive vice president of T.R. Miller. Testimony indicates that Neal and Miller promulgated T.R. Miller’s safety policies. T.R. Miller’s production manager testified that Neal was “always” concerned with safety; that when Neal would walk through the mill he would make notes of unsafe work practices and attempt to correct them; and that Neal played an active role in assuring safe work practices. Neal had received a safety report that indicated that “all heights above four feet should have necessary railings and/or barrier guards,” although the record does not conclusively indicate whether that statement concerned working from forklifts, as Hawkins was, or referred to other elevated areas in the mill. Overall, the evidence indicates that Neal occupied a position similar to that of Miller and similar to that of Beggerly in Malone, 545 So.2d at 1321. The record indicates that Neal had on occasion stopped and talked to Hawkins, but it does not indicate that Neal knew that Hawkins was working on the elevated lumber to unclog the blowpipe. No evidence indicates that he assumed or was delegated a personal duty to Hawkins. The summary judgment was proper as to W.T. Neal, and as to him it is due to be affirmed.
John S. Neal, son of W.T. Neal, Jr., was the production manager for T.R. Miller at the time of Hawkins’s accident. Neal testified that his employment as production manager included safety duties; that he frequently went into the mill to look for safety hazards; and that if he noted unsafe work practices, he acted to correct them. Hawkins testified that Neal “came by that day [the day of the accident] and he saw us having the problem but he didn’t stop.” There is considerable evidence in the record contradicting Hawkins’s statement; however, viewing the evidence in the light most favorable to Hawkins, we find a scintilla of evidence that Neal breached his personal assumed or delegated duty to Hawkins. The trial court committed reversible error when it entered the summary judgment for John S. Neal, and as to John S. Neal the judgment is due to be reversed.
Blaine Salter was maintenance shift foreman at T.R. Miller at the time of Hawkins’s accident. Viewed in the light most favorable to Hawkins, the evidence indicates that Salter, as maintenance foreman, was responsible for ensuring the safety of those T.R. Miller employees performing work under his supervision and that Salter was in charge of the entire unclogging operation, that he was in charge of the work from the elevated lumber, that he instructed his men to get the forklift and the bundle of lumber to work from, and that he was on the elevated lumber with Hawkins at the time of the accident. The record contains much evidence that Salter breached a personal duty to Hawkins to provide safe working conditions. Accordingly, the summary judgment was improperly granted as to Blaine Salter, and as to him the judgment is due to be reversed.
Mike Thompson was safety director at T.R. Miller at the time of Hawkins’s injury. The evidence indicates that Thompson routinely toured the mill, seeking to correct safety deficiencies. Viewed in the light most favorable to Hawkins, the evidence indicates that Thompson knew that T.R. Miller employees sometimes worked from forklifts in the manner in which Hawkins was working when he was injured. Accordingly, there is a scintilla of evidence that Thompson breached a personal assumed or delegated duty to Hawkins. The trial court erred when it entered summary judgment for Thompson, and as to him the judgment is due to be reversed.
*341 The judgment is affirmed as to John R. Miller and W.T. Neal, Jr., and reversed as to John S. Neal, Mike Thompson, and Blaine Salter, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and JONES and SHORES, JJ., concur.
HOUSTON, J., concurs specially.

. Although the Hawkinses' complaint named many defendants, the five defendants in this appeal are the only ones remaining in the action. This case has been before this Court on four other occasions: Neal v. Hawkins, 562 So.2d 318 (Ala. 1989); Hawkins v. Gallagher & Co., 555 So.2d 118 (Ala.1989); Hawkins v. Montgomery Industries, Int'l, Inc., 536 So.2d 922 (Ala. 1988); Ex parte Hawkins, 497 So.2d 825 (Ala. 1986).